Filed 5/27/25  Park v. Bradford Construction CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JULIE PARK et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>BRADFORD CONSTRUCTION, INC.,<br><br>        Defendant and Respondent. | A171033<br><br>(City & County of San Francisco Super. Ct. No. CGC-23-606672) |

        This appeal arises from a dispute about performance of a construction contract.  Julie Park and Tom McDonald (plaintiffs) filed the underlying action against Bradford Construction, Inc. (defendant) for violating the Contractors State License Law (CSLL).  (Bus. & Prof. Code, §§ 7000 et seq.; statutory references are to this code unless otherwise indicated.)  Plaintiffs contend that defendant must return all compensation for its work as a contractor on plaintiffs' project because it did not have a contractor's license when the construction contract was executed and performed.  (§ 7031, subd. (b) (section 7031(b)).)  After denying plaintiffs summary judgment, the trial court granted defendant judgment on the pleadings.  We shall reverse this grant because the trial court erred in finding that, as a matter of law,

1

defendant substantially complied with the CSLL licensure requirement. (§ 7031, subd. (e) (section 7031(e)).)

## I.  STATUTORY OVERVIEW

The CSLL establishes a "comprehensive legislative scheme" that governs contractors doing business in California.  (*WSS Industrial Construction, Inc. v. Great West Contractors, Inc.* (2008) 162 Cal.App.4th 581, 587 (*WSS Industrial*).)  Its purpose is to protect the public from incompetence and dishonesty in the building and construction services industry. (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995.)  To this end, the CSLL "requires contractors to be licensed unless they are exempt from licensure."  (*Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1449 (*Twenty-Nine Palms*).)  And it imposes "strict and harsh penalties for a contractor's failure to maintain proper licensure."  (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 418 (*MW Erectors*).)

The first two provisions of section 7031 are designed to enforce CSLL licensure requirements.  Section 7031, subdivision (a) (§ 7031(a)) states that a person engaged in the business of a contractor may not bring an action for compensation for work that requires a contractor's license "without alleging that they were a duly licensed contractor at all times during the performance of that act or contract."  Section 7031(b) authorizes a person who "utilizes the services of an unlicensed contractor" to bring an action to recover "all compensation paid to the unlicensed contractor for performance of any act or contract."  Though worded somewhat differently these two subdivisions "are interpreted 'in a consistent manner, resulting in the same remedy regardless of whether the unlicensed contractor is the plaintiff or the defendant.' " (*Judicial Council of California v. Jacobs Facilities, Inc.* (2015) 239

Cal.App.4th 882, 895 (*Judicial Council*).)  They "are essentially two sides of the same coin in denying compensation to an unlicensed contractor."  (*Ibid*.)

The California Supreme Court has determined that the Legislature intends for courts to apply this licensure law strictly, for the protection of the public.  (*MW Erectors*, *supra*, 36 Cal.4th at pp. 428–429.)  The *MW Erectors* court found that section 7031(a) bars a contractor from recovering *any* compensation if "*at any time* during performance of an agreement for contractor services" the contractor was not duly licensed.  (*MW Erectors*, at p. 425.)  Other courts have followed suit in strictly construing section 7031 despite apparent injustice to the unlicensed contractor.  (*Judicial Council*, *supra*, 239 Cal.App.4th at pp. 896, 899; *American Building Innovation LP v. Balfour Beatty Construction*, *LLC* (2024) 104 Cal.App.5th 954, 966.)  Thus, the contractor may not assert equitable offenses, such as unjust enrichment or bad faith on the part of the other party, and the unlicensed contractor is subject to forfeiture even if the other contracting party was aware that the contractor did not have a license.  (*Judicial Council*, at pp. 896–897.) " ' "Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties," ' "and the rule's " 'harsh results are justified by the importance of deterring violations of the licensing requirements.' " (*American Building Innovation*, at p. 966.)

Decades ago, courts developed a doctrine of substantial compliance to mitigate the harsh effects of section 7031, but the judicial doctrine was abolished in 1989.  (*Judicial Council*, *supra*, 239 Cal.App.4th at p. 896.) Subsequently, the Legislature reintroduced a limited defense of substantial compliance by enacting section 7031(e), which is "the exclusive means for

3

avoiding forfeiture in the event of a violation of [the] CSLL." (*Judicial Council*, at p. 896.)

Currently, section 7031(e) states: "The judicial doctrine of substantial compliance shall not apply under this section where the person who engaged in the business or acted in the capacity of a contractor has never been a duly licensed contractor in this state. However, . . . the court may determine that there has been substantial compliance with licensure requirements under this section if it is shown at an evidentiary hearing that the person who engaged in the business or acted in the capacity of a contractor (1) had been duly licensed as a contractor in this state prior to the performance of the act or contract, (2) acted reasonably and in good faith to maintain proper licensure, and (3) acted promptly and in good faith to remedy the failure to comply with the licensure requirements upon learning of the failure."

"For a contractor failing to qualify under the statutory safe harbor of subdivision (e), section 7031 is truly a strict liability statute." (*Judicial Council*, *supra*, 239 Cal.App.4th at p. 897.)

## II. BACKGROUND

### *Plaintiffs' Claim*

Plaintiffs filed the underlying action in May 2023. In their operative first amended complaint, plaintiffs allege they engaged defendant to complete a remodel construction project at their home. In the fall of 2021, defendant was given plans for the project and then provided a fixed price contract, which the parties executed on January 30, 2022. The construction contract, attached as Exhibit 1 to the complaint, identifies plaintiffs as the " 'Owner, ' " and defendant as the " 'Contractor,' " and sets forth the terms of their agreement, including work to be performed and cost of said work. Plaintiffs signed the contract on lines designating them as Owners. For the Contractor,

4

the contract was signed by Michael Bradford, whose name was typed below his signature.

Plaintiffs allege that after defendant began work on the project, it issued periodic invoices, which plaintiffs paid until October 2022, when they instructed defendant to stop work due to concerns about construction expenses and the quality of work. By that time, plaintiffs had paid defendant $385,993, about 80 percent of the total contract price. In February 2023, plaintiffs terminated the contract.

Plaintiffs allege that after defendant stopped work on their project, they learned defendant was not licensed by the California Contractor's State License Board (CSLB). On information and belief, plaintiffs allege that defendant is a California corporation doing business in San Francisco; that it does not hold a license with the CSLB; and that it was not a licensed contractor either before or during its work on the construction project. Plaintiffs attach as Exhibit 4 to their complaint a Certification of Records issued by the CSLB, which states that a March 2023 search of its records uncovered "**no record**" indicating that defendant was licensed as a California Contractor during the period from January 1, 2018 to March 27, 2023.

Plaintiffs incorporate these allegations into a cause of action to recover, pursuant to section 7031(b), all compensation they paid to defendant. Plaintiffs allege that because defendant was an unlicensed contractor it was barred from accepting any compensation for work performed on the project.

***Summary Judgment Motions***

In January 2024, defendant moved for summary judgment. (Code Civ. Proc., § 437c, subd. (c).) Defendant argued that plaintiffs are not entitled to

disgorgement under section 7031 because undisputed facts establish that defendant substantially complied with statutory licensure requirements.

Defendant supported its motion with a declaration from Michael Bradford, who averred to the following facts:  Bradford resides in Japan.  He is "a general contractor by training," and he obtained a class B general contractor's license in September 2003.  In September 2010, he decided to form a corporation for his business.  He was informed and believed that in July 2011, a former office manager completed and submitted an application requesting that the CSLB transfer his contractor's license to his corporation. Bradford declared that he has often engaged subcontractors, and "at times" he has had a number of employees.  But today, and at the time he performed "supervisory work" for plaintiffs, his "company" consists only of himself and his wife, who are the sole owners.  Bradford stated further that after plaintiffs filed this action, he discovered for the first time that his application to transfer his contractor's license had not been processed by the CSLB. Upon discovering this fact, he "promptly filed" another application requesting transfer of his license to his corporation.  Bradford's counsel assisted him with the application process, and he was informed and believed that "the license name transfer was successful."

Defendant's summary judgment motion was taken off calendar because it had been filed in the wrong department of the superior court.  By that time, plaintiffs had filed their own motion for summary judgment.

Plaintiffs argued they were entitled to summary judgment under section 7031 because defendant was "not properly licensed at the times it performed work at [plaintiffs'] home," and defendant could not avail itself of the substantial compliance exception in section 7031(e) because it had never been licensed before working on the project.  Michael Bradford's licensure

6

status was irrelevant, plaintiffs argued, because defendant is a distinct corporate entity. Plaintiffs' summary judgment evidence included defendant's responses to discovery requests admitting that defendant did not possess a CSLB license when the construction contract was signed or "at any time during the performance of work" on the project. Plaintiffs also relied on the construction contract as proof that defendant was their contractor. And they relied on the certified document from the CSLB as well as the Bradford declaration as proof that defendant had not been licensed at any time before it entered into the contract with plaintiffs.

Defendant opposed plaintiffs' motion on the ground that it substantially complied with the CSLL. Defendant sought judicial notice of its previously filed summary judgment motion, acknowledging that it had been taken off calendar. Defendant also requested judicial notice of "updated records pertaining to Bradford Construction," a two-page Certification of Records issued by the CSLB in March 2024. This document certifies that "Bradford Construction Inc" holds license number 823549. (Boldface omitted.) The license is effective as a class B general building contractor license. A section of the certification form that calendars the "History" of the license shows that it was issued on September 7, 2003; suspended for a period in 2012 and again in 2013; expired but was quickly renewed in 2019; and was reassigned on February 21, 2024. A section of the certification titled "Additional Information" states, in part: "This license was originally issued to Michael Robert Bradford, as a sole ownership license. The license was reassigned to a corporation effective 2/21/2024." (Citing § 7075.1.)[1]

---

[1] Section 7075.1 provides that a contractor's license is not transferable, but a "license number" may be "reissued or reassigned to a different entity" under specified conditions. (§ 7075.1, subds. (a) and (c).) Pertinent here, the license number may be

In its opposition brief, defendant argued that the reissuance of Bradford's license "is the ultimate game changer," as it establishes a "continuity of licensure." According to defendant, plaintiffs were not entitled to summary judgment because they could not cite any authority precluding a contractor from invoking the substantial compliance exception when a continuity of licensure has been shown.

In their reply brief, plaintiffs argued that the CSLB's updated certification of records did not create a triable issue regarding the applicability of section 7031(b) because it showed the license reassignment did not go into effect until long after the work was done. Thus, plaintiffs' argued that defendant could not meet the first requirement of section 7031(e) to show that it "had been duly licensed . . . prior to the performance of the act or contract."

***Order Denying Plaintiffs Summary Judgment***

Plaintiffs' motion was heard and decided on May 29, 2024. Prior to the hearing, the court issued a tentative ruling to deny plaintiffs' motion as a matter of law on the ground that defendant met the substantial compliance requirements of section 7031(e). Plaintiffs contested the tentative, renewing their arguments that defendant was not duly licensed during the relevant time period, and that the first prong of the substantial compliance exception could not be satisfied. The court appeared unpersuaded: "To my mind, this case really boils down to the fact that Mr. Bradford was licensed when the work was done by his entity. He forgot to get his entity licensed but eventually did. [¶] I'm just having trouble with why the homeowner should get . . . to pay nothing for the work that was done for them . . . ." Plaintiffs

---

reassigned to a corporation when the corporation "is formed by an individual licensee and the individual licensee maintains ownership directly or indirectly of shares . . . evidencing more than 50 percent of the voting power." (§ 7075.1, subd. (c)(5).)

argued that the substantial compliance exception is strictly construed and urged the court to reconsider its tentative. Alternatively, they requested that the ruling be made without prejudice to present additional evidence on the issue of substantial compliance at trial. The court responded: "You're always free to do that. This is just a summary judgment motion."

After the hearing concluded, the court signed defendant's proposed order, which incorporates the tentative ruling and denies plaintiff's motion for summary judgment as a matter of law. The order recites the following facts: Defendant entered into a home improvement contract with plaintiffs; at that time, Bradford held a license as a sole proprietorship; Bradford believed he transferred the license to defendant years earlier, but the transfer did not occur; after this action was filed, Bradford applied to the CSLB and his license was reassigned to defendant.

Given these facts, the court reached the following conclusions in its order: First, reissuance of Bradford's license "cured the defect" as to defendant's unlicensed status. Second, "defendant meets the substantial compliance requirements of B&P 7031(e) [and] plaintiffs' claim for disgorgement fails as a matter of law."

### Judgment on the Pleadings

In June 2024, defendant filed a motion for judgment on the pleadings. Defendant argued the finding on summary judgment that defendant substantially complied with the licensure requirement establishes that plaintiffs' cause of action under section 7031(b) fails as a matter of law. Plaintiffs opposed defendant's motion as untimely but did not address its merits. On July 1, 2024, the trial court granted defendant judgment on the pleadings without leave to amend. To reach this disposition, the court took

9

judicial notice of its order denying plaintiffs summary judgment and concluded that this "prior adjudication disposes of plaintiffs' sole claim."

## DISCUSSION

" 'A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. [Citation.] A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.' " (*People ex rel. Harris v. Pac. Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.) "In considering whether a defendant is entitled to judgment on the pleadings, we look only to the face of the pleading under attack . . . . All facts alleged in the complaint are admitted for purposes of the motion, and the court determines whether those facts constitute a cause of action. The court also may consider matters subject to judicial notice.' " (*Harris v. Grimes* (2002) 104 Cal.App.4th 180, 185.)

Here, the record shows that plaintiffs stated a claim under section 7031(b) by alleging facts to show that defendant was an unlicensed contractor before and during work performed pursuant to the construction contract. The trial court did not address plaintiffs' allegations or find them insufficient to state a claim but concluded instead that plaintiffs' claim fails in light of the order denying them summary judgment. In granting defendant judgment on the pleadings, the court construed its summary judgment ruling as establishing, as a matter of law, that defendant has satisfied section 7031(e)'s substantial compliance exception.

As a preliminary matter, this ruling obscures the distinction between granting summary judgment and denying it. Judgment may be entered following a grant of summary judgment. (Code Civ. Proc., § 437c, subd. (m)(1); see e.g. *Twenty-Nine Palms*, *supra*, 210 Cal.App.4th 1435

10

[plaintiff granted summary judgment of claim to recover compensation paid to unlicensed contractor].) However, nobody was granted summary judgment in this case; defendant's motion was taken off calendar and plaintiffs' motion was denied. An order denying summary judgment "is merely a finding that there is an issue of fact to be tried," and does not constitute a final decision on the merits. (*Schulze v. Schulze* (1953) 121 Cal.App.2d 75, 83.) We also note that denial of a motion for summary judgment is not an appealable order. (*Longobardo v. Avco Corp.* (2023) 93 Cal.App.5th 429, 431–432.) Appellate review of an order denying summary judgment is limited to the writ review process. (*Id.* at p. 433; Code Civ. Proc., § 437c, subd. (m)(1).) In this appeal, we do not review the order denying plaintiffs summary judgment but rather the finding that defendant substantially complied with CSLL licensure requirements, which was made initially in a summary judgment proceeding and subsequently used as the basis for granting defendant judgment on the pleadings.[2] As we shall explain, this finding by the trial court constitutes, at least in the context of the motion for judgment on the pleadings, reversible error.

Section 7031(e) "provides the sole exception to the contractor's licensure requirements." (*WSS Industrial, supra,* 162 Cal.App.4th at p. 588.) And a court may not find that a litigant falls within this statutory safe harbor unless "it is shown at an evidentiary hearing that the person who engaged in the business or acted in the capacity of a contractor (1) had been duly licensed as a contractor in this state prior to the performance of the act or contract, (2) acted reasonably and in good faith to maintain proper licensure, and (3) acted promptly and in good faith to remedy the failure to comply with

---

[2] As the denial of plaintiffs' motion for summary judgment is not subject to review in this appeal, we will not entertain plaintiffs' request for an order instructing the trial court to grant them summary judgment.

11

the licensure requirements upon learning of the failure." (§ 7031(e); see *WSS Industries*, at p. 589 [substantial compliance doctrine "only applies if all three requirements of subdivision (e) are met"].)

We begin with the first requirement, that "the person who engaged in the business or acted in the capacity of a contractor" must have been duly licensed as a contractor prior to performance of the contract. (§ 7031(e)(1).) As used in section 7031, the word "person" includes a corporation. (§ 7025.) Moreover, while a sole proprietorship is not a separate legal entity from its owner, a corporation is a distinct legal entity separate from its shareholders and officers. (*Twenty-Nine Palms*, *supra*, 210 Cal.App.4th at pp. 1449–1450.) As defendant is the "person" seeking to invoke the substantial compliance exception, the pertinent inquiry under section 7031(e)(1) is whether defendant itself was duly licensed prior to performance of the contract.

As our background summary reflects, section 7031(e)(1) became the focus of the summary judgment proceeding. The trial court did not make an express finding as to whether defendant met this statutory requirement. But it did make these factual findings: When defendant entered into the contract with plaintiffs, it was "unlicensed," but its "principal" held a license as a sole proprietorship. Even if we assume for the sake of argument that these facts are subject to judicial notice, they do not satisfy the first prerequisite for substantial compliance. Courts have repeatedly held that a corporation cannot satisfy section 7031(e) based on the licensure status of a corporate officer or employee. (*Phoenix Mechanical Pipeline, Inc. v. Space Exploration Technologies Corp.* (2017) 12 Cal.App.5th 842, 848–849 (*Phoenix Mechanical Pipeline*) [allegation that unlicensed corporation's " 'responsible manager officer' " was licensed is insufficient]; *WSS Industrial*, *supra*, 162 Cal.App.4th at p. 585 [error to conclude unlicensed corporation substantially complied

12

with licensure requirement by virtue of its president holding an individual license]; *Opp v. St. Paul Fire & Marine Ins. Co.* (2007) 154 Cal.App.4th 71, 79 [unlicensed corporation could not rely on employee's license].) Thus, the fact that Michael Bradford was licensed when the contract was executed does not establish that *defendant* was licensed prior to the contract's performance. And we find no other evidence or allegation that defendant itself was licensed prior to execution or performance of the contract. On this basis alone, the trial court erred in concluding that, as a matter of law, defendant substantially complied with section 7031.

Defendant intimates that it can rely on Bradford's license to satisfy section 7031(e)(1) because he signed the contract as the " 'contractor.' " But the contract explicitly states that defendant was the contractor. Regardless, Michael Bradford's status as a contractor is not dispositive here because he is not a party in this lawsuit, and he is not the contractor claiming the protection of the substantial compliance exception. (Cf. *Panterra GP, Inc. v. Superior Court* (2022) 74 Cal.App.5th 697 [section 7031 does not bar licensed contractor from stating claim to recover compensation for its own work, notwithstanding written contract naming as the contractor unlicensed partnership of which it was the general partner]; *Kim v. TWA Construction, Inc.* (2022) 78 Cal.App.5th 808, 831 [section 7031 bars licensed general contractor from "bringing an action for compensation for an act or contract performed by an unlicensed subcontractor"].)

Furthermore, a defendant seeking to rely on the substantial compliance exception must also show that it acted reasonably and in good faith, both to maintain proper licensure (§ 7031(e)(2)) and to remedy the failure to comply with the licensure requirement upon learning of its failure (§ 7031(e)(3)). By their plain language, section 7031(e)(2) and (e)(3) require the court to conduct

13

an objective and subjective assessment of the defendant's conduct, in order to determine whether it acted reasonably and in good faith. In this case, the pleadings do not address, and the trial court made no findings regarding, whether defendant satisfied these particular requirements.

In concluding that defendant substantially complied with the CSLL, the trial court found as follows: Bradford believed that he had transferred his individual license to defendant some years before defendant entered into the contract; the transfer did not occur "due to a mix up"; and, after this lawsuit was filed, Bradford applied to the CSLB, and his license was reassigned to defendant. Even if these findings were subject to judicial notice, we cannot say they show as a matter of law that defendant acted reasonably and in good faith to maintain proper licensure, and to remedy its failure to acquire a license upon discovering the error. (See § 7031(e)(2) & (3).) Indeed, there is no evidence or allegation that defendant took any action prior to 2024 to confirm Bradford's license had been properly reassigned.

The trial court appears to have adopted defendant's view that defendant does not have to satisfy the specific requirements in section 7031(e) because substantial compliance was established a different way— with evidence that Bradford's 2003 license was reassigned to defendant. The court found that this reassignment "cured the defect" relating to defendant's unlicensed status. In reaching this conclusion, the court emphasized that the reissued license was originally issued to Bradford in September 2003.

To the extent the trial court excused defendant from having to prove that it met every requirement in section 7031(e), the court erred. (See, e.g., *Phoenix Mechanical Pipeline, supra*, 12 Cal.App.5th at p. 847 [Supreme Court has "interpreted the section strictly to fulfill its purpose"].) Evidence that Bradford's license was originally issued prior to execution of the contract is

14

not dispositive as to any of the statutory factors, which focus on the licensure status of the entity that acted as a contractor—the defendant in this case—not on the history of the license. As plaintiffs argued below, the reassignment of the license to defendant first became effective in February 2024, *after* work on the contract was done. Neither the trial court nor defendant have cited authority for their view that reassignment of a license after work was done entitles a contractor to the benefit of section 7031(e). Instead, the court mistakenly analogized this case to *E. J. Franks Construction, Inc. v. Sahota* (2014) 226 Cal.App.4th 1123 (*E. J. Franks*), a case relied on by defendant in opposing summary judgment.

*E. J. Franks* was an appeal from a judgment following a jury trial, which awarded quantum meruit damages to the plaintiff corporation for contractor work it performed in connection with the defendants' home construction project. (*E. J. Franks*, *supra*, 226 Cal.App.4th at pp. 1126–1127.) Defendants argued they were entitled to judgment notwithstanding the verdict because section 7031 barred any recovery by a plaintiff that was unlicensed when work under the contract began. The *E. J. Franks* court rejected this contention, finding that section 7031 did not apply to the "unique situation" presented (*id*. at p. 1126), which it described this way: "When the parties entered the contract, E. J. Franks Construction was a licensed general building contractor, having been issued a license on April 14, 1995. During the course of the [project], E. J. Franks Construction incorporated, and the license issued to and maintained by Franks was reissued to the corporation on April 12, 2005. Therefore, all of the work accomplished at the [defendants'] residence was performed by a licensed contractor, to wit: the license issued to E. J. Franks Construction in 1995 and valid through April 11, 2005, and the license issued to E. J. Franks

15

Construction, Inc., on April 12, 2005, and valid through April 30, 2015." (*Id.* at p. 1129, italics omitted.)

The *E. J. Franks* court supported its conclusion that section 7031 did not bar the plaintiff's quantum meruit recovery with three material findings. First, at no time was work on the defendants' project performed by an unlicensed contractor. (*E. J. Franks*, *supra*, 226 Cal.App.4th at p. 1129.) Rather, the court found, "this case involves a licensed contractor and a change in business entity status. Proper licensure was in place at all times." (*Ibid*, italics omitted.) Second, the court distinguished cases in which a corporation was barred from recovering compensation because the corporation had acted as contractor without a license. (*Id.* at p. 1130.) The plaintiff had not made this mistake, the court explained. "Rather, the corporation . . . was licensed as of April 12, 2005, and that business entity merely continued the work the sole proprietor began." (*Ibid.*) Finally, the court found that the damages plaintiff recovered did not pertain to "either work performed while the corporation was unlicensed or work performed pursuant to the contract [that] Franks, as an individual or sole proprietor, entered into with the [defendants]." (*Id.* at p. 1131.) Rather, the award of quantum meruit damages "covered only extra work over and above the contract, and only for the period" after Frank's license was reissued to the plaintiff corporation. (*Ibid.*)

The trial court concluded this case is like *E. J. Franks* because (1) all work was performed by a licensed contractor, and (2) the reissuance of a license resulted in a continuity of licensure. We disagree that either of these facts has been established as a matter of law.

To begin with, the record does not show that all work was performed by a licensed contractor. The complaint alleges, and no evidence subject to

16

judicial notice refutes, that defendant was not licensed when it entered into the contract, or when any of the work was done. Although there is evidence that Michael Bradford was at all relevant times a principal of defendant and was licensed, Bradford resides in Japan and we find no evidence regarding the role he played in this project, even if we could somehow overlook the significance of the corporate form.

Furthermore, although this case involves reissuance of a license, it does not involve the same continuity of licensure as *E. J. Franks*. The license in *E. J. Franks* was reissued during the course of the project when there was a change of business status, and there was continuity of licensure because the business entity that served as contractor was always licensed—first during the period it was operated as a sole proprietorship and then when it became a corporation. (*E. J. Franks*, *supra*, 226 Cal.App.4th at pp. 1129–1131.) In the case before us, there was no such continuity of licensure because, after defendant was incorporated and became a separate legal entity, it was unlicensed for years before Bradford's license was reissued to it in February 2024. And it was during the lengthy period when defendant lacked a license that it worked as a contractor for plaintiffs.

Finally, we observe that *E. J. Franks* permitted a corporation to recover damages for work performed while it was licensed as a contractor. Perhaps because the corporation there was actually licensed, the *E.J. Franks* court never addressed application of the substantial compliance exception to section 7031(e). Thus, the case is not authority for the trial court's finding here, that defendant substantially complied with CSLL licensure requirements as a matter of law.

Because we find no sufficient basis for the trial court's substantial compliance finding in the record, the CSLL, or the case law, we must

17

conclude the court erred in granting defendant judgment on the pleadings. *If* defendant is able on remand to avoid the harsh judgment of the CSLL, it will be on the basis of additional evidence that was not previously presented in opposing plaintiffs' motion for judgment on the pleadings.

## DISPOSITION

The judgment is reversed. Plaintiffs shall recover costs on appeal.



TUCHER, P. J.


WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.


*Park et al. v. Bradford Construction, Inc.* (A171033)